UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LORI GJENASHAJ AND QAMIL GJENASHAJ<br><br>                              Plaintiffs<br><br>vs.<br><br>THE CITY OF NEW YORK, LIEUTENANT MATTHEW HARRISON individually and in his official capacity, POLICE OFFICER GIANCARLO MARATEA individually and in his official capacity, POLICE OFFICER RAYCHEL CAMPANELLA-RIVERA individually and in her official capacity, POLICE OFFICER VANESA MEDINA individually and in her official capacity, POLICE OFFICER BRUNILA SANTANA individually and in her official capacity, and POLICE OFFICER THOMAS GUGLIUCCI, individually and in his official capacity, employees of The City of New York.<br><br>                              Defendants | **SECOND AMENDED COMPLAINT**<br><br>JURY TRIAL DEMANDED<br><br>Civil Action No. 19-CV-04142 |

By and through their attorney, Joseph I. Stone, Esq., Plaintiffs Lori Gjenashaj and Qamil Gjenashaj allege upon knowledge, information and/or belief as follows:

**PRELIMINARY STATEMENT**

1.      This is a civil rights action in which Plaintiffs Lori Gjenashaj and Qamil Gjenashaj seek relief for Defendants' violation of their civil rights, privileges, and immunities secured by 42 U.S.C. Section 1983, 42 U.S.C. Section 12131, et. seq. ("ADA"), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

2. It is alleged that the Defendants, acting jointly and severally, used unreasonable force that culminated in the shooting of Lori Gjenashaj on March 25, 2018, in the vicinity of Highland Avenue and Howard Avenue, Staten Island, New York, and resulting in her hospitalization of one week at the Richmond University Medical Center, Staten Island, New York, and subsequently at Elmhurst General Hospital, Queens, New York, for approximately 25 days.

3. It is further alleged that the Defendants were aware or should have been aware of Plaintiff Lori Gjenashaj's mental problems and failed to follow proper police protocol when dealing with such persons with known mental disabilities.

4. Plaintiffs seek a declaratory judgment that the NYPD failed to adhere to police protocol while making a valid arrest that resulted in the shooting of Plaintiff Lori Gjenashaj using unnecessary and excessive force and falsely arresting Plaintiff Qamil Gjenashaj. Plaintiffs also seek compensatory and punitive damages to the maximum extent permitted by law.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 and Section 1343. Plaintiff further invokes the supplemental jurisdiction of this Court under 28 U.S.C. Section 1367 to hear and decide claims arising under state law.

6. Venue is proper in the Southern District of New York. The headquarters of the New York City Police Department is located at One Police Plaza, New York, New York, within the Southern District of New York.

## PARTIES

7. Plaintiffs Lori Gjenashaj and Qamil Gjenashaj are residents of the United States and of the City of New York.

8.  Defendant City of New York ("City") is a duly constituted municipal corporation of the State of New York. It is authorized under the laws of the State of New York to maintain a police department, the New York City Police Department ("NYPD"), which acts as its agent in the area of law enforcement and for which it is ultimately responsible. The City assumes the risks incidental to the maintenance of a police force and the employment of police officers.

9.  Defendant Lieutenant Matthew Harrison ("Harrison") is an employee of the City and a member of the NYPD. He is one of numerous officers who were onsite when Lori Gjenashaj was shot on March 25, 2018. At all times relevant to the facts of the Complaint, said defendant was acting under color of law and within the scope of his employment by the City. Said Defendant is sued in his individual and official capacities.

10. Police Officer Wright was an employee of the City and a member of the NYPD. He was onsite when Lori Gjenashaj was shot on March 25, 2018.  Officer Richard Velez arrested plaintiff Lori Gjenashajon March 24, 2018, and was aware of her bizarre behavior and advised or should have advised fellow officers of her obvious erratic behavior.  Officers Wright and Velez were voluntarily dismissed from this action on November 13, 2019. [ECF Doc. No. 35].

11. Defendants Matthew Harrison, Giancarlo Matatea, Thomas Gugliucci, Raychel Campanella-Rivera, Vanesa Medina and Brunila Santana are employees of the City who were present at the scene on March 25, 2018. On information and belief, said Defendants participated in the arrest and shooting of Lori Gjenashaj.

## FACTUAL ALLEGATIONS

12. The incident complained of herein occurred on March 25, 2018, at approximately 12:30 P.M. on Highland Avenue in the vicinity of Howard Avenue, Staten Island, New York.

13. Lori Gjenashaj is a 42-year-old mother of two, a 15 year old son and 11 year old daughter, residing at 765 Nugent Avenue, Staten Island, New York 10306, with her husband, Qamil Gjenashaj.

14. A Notice of Claim pursuant to New York General Municipal Law Section 50-e was timely served upon Defendant City on June 22, 2018. More than thirty days have elapsed without the matter being resolved by City. The Notice of Claim provided detailed information regarding the actions that the officers took during the incident with Lori Gjenashaj and Qamil Gjenashaj and was sufficient to put the officers and the City on notice that the conduct that they were alleged to have engaged in was an extreme and unnecessary use of excess force.

15. Plaintiff Lori Gjenashaj had previously committed an admitted crime and was temporarily fleeing the police. Her actions were chaotic, and her behavior and actions should have been considered to be the actions of an unstable individual. She was alone in her vehicle, had come to a complete stop and was surrounded by police vehicles and heavily armed police officers. No civilians were near the area; therefore, there was no danger to any onlookers. Lori Gjenashaj was effectively contained.

16. The City has a policy for emotionally disturbed persons ("EDPs") and should have followed it in these circumstances.

17. In the wake of the Bumpurs killing, the NYPD adopted certain policies regarding interactions with EDPs. According to the NYPD EDP policy, the use of deadly force is a last resort. Officers are directed to deploy protective shields and to use non-lethal devices to ensure the safety of all those present.  Officers are also directed to request assistance from a medical expert if needed and to seek assistance from the subject's family or friends.

18. On information and belief, in violation of the NYPD EDP Policy, the Precinct Commander /Duty Captain was not notified by the desk officer or other officers and did not respond to the scene. The failure to notify the Precinct Commander /Duty Captain violated the NYPD EDP Policy. Under said policy it is the responsibility of the Precinct Commander/Duty Captain to inter alia, assume command, including firearms control; confer with the ranking supervisor on the scene; develop plans and tactics to be utilized; direct whatever further action is necessary, including the use of negotiators; direct the use of alternate means of restraint, including, but not limited to, OC spray, tear gas, baton, restraining equipment or stun device.

19. The failure to notify the Precinct Commander /Duty Captain resulted and/or caused a failure of command structure at the scene, a failure to properly supervise the arresting officers and other personnel, and contributed to the series of events that ultimately led to the improper and reckless shooting of Lori Gjenashaj using excessive force.

20. According to the NYPD EDP policy, until the commanding office or duty captain arrives at the scene, the highest ranking uniformed police supervisor is in command and required to coordinate police operations. At the scene there was one lieutenant, Matthew Harrison.

21. Lieutenant Harrison failed to ensure that all officers were directed to maintain firearms control. He failed to designate one or more officers to act as the designated shooter(s) in the event the use of deadly force becomes unavoidable. The failure to designate shooter(s) resulted in a mass reflex where ten or more shots were randomly fired. The said failures were in violation of the NYPD Barricaded Persons Policy and contributed to or caused Lori Gjenashaj injuries.

22. According to the NYPD EDP Policy, if the EDP is contained, and Lori Gjenashaj certainly was, and is believed to be armed or violent but due to containment poses no immediate

threat of danger to any person, no additional action may be taken without the authorization of the commanding officer or duty captain at the scene.

23. Lieutenant Harrison failed to comply with NYPD EDP Policy and allowed numerous officers to fire simultaneously at Lori Gjenashaj striking her and her vehicle.

24. Upon information and belief, Defendant Gugliucci was responsible for securing all of the firearms used at the scene and also tasked with collecting ballistics evidence.

25. However, Defendant Gugliucci has a long history of civil rights accusations and was named as a defendant in four separate civil rights actions: Hutchinson et al v. City of New York et al 2009; Derisse v. City of New York, et al, 2012, Michel v. City of New York et al, 2009 and Bowen v. City of New York, 2014.

26. Notwithstanding his history, Officer Gugliucci was allowed to take charge of all of the officers' weapons after the shooting.

27. In sum, the actions of the NYPD were contrary to proper official police procedures and subject to unwritten policies that caused unnecessary injuries, needless depravation of constitutional rights and serious emotional distress to Plaintiffs, all of which could have been avoided.

## AS AND FOR THE FIRST CAUSE OF ACTION AND CLAIM FOR RELIEF

*(Unnecessary force, cruel and unusual punishment, pain and suffering as to Plaintiff Lori Gjenashaj)*

28. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

29. On March 28, 2018, Plaintiff Lori Gjenashaj had committed the crimes of burglary, criminal mischief, menacing and possession of a weapon, which was dismissed after the gun was deemed inoperable, and was fleeing the police. She had parked and was surrounded by police cars.

6

She claims she exited her vehicle with nothing in her hand, having left a "toy" gun on the floor of the car.

30. Without warning, numerous police officers fired an unknown number of shots, striking Plaintiff Lori Gjenashaj in the shoulder and randomly shooting and hitting her vehicle multiple times. The arrest of Plaintiff Lori Gjenashaj was accomplished but the force used was unnecessary and well in excess of all Constitutional standards.

## AS AND FOR A SECOND CAUSE OF ACTION AND CLAIM FOR RELIEF

*(False Imprisonment as to Qamil Gjenashaj)*

31. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

32. Plaintiff Qamil Gjenashaj was in the passenger seat of the vehicle driven by Lori Gjenashaj. The car was momentarily stopped by the police and Plaintiff Qamil Gjenashaj was forcibly taken from the vehicle, then taken to the police station by Brunila Santana and others and interrogated while handcuffed for approximately seven hours. He was subsequently released without any charges.

33. Prior to being forcibly removed from the vehicle, Plaintiff Qamil Gjenashaj was witnessed by members of the NYPD and others chasing Lori Gjenashaj and trying to get her to calm down so he could seek medical attention on her behalf.

34. At no time did Plaintiff Qamil Gjenashaj pose a risk of any kind; on the contrary, numerous witnesses support his contention that he was trying to seek medical attention for Lori Gjenashaj and jumped into the vehicle to prevent Lori from harming herself or others.

35. During his interrogation he advised the officers about Lori Gjenashaj's mental problems and informed officers that he was trying to get Lori Gjenashaj to the hospital to address her current mental state.

36. During his unlawful detainment, he also offered to help locate Lori Gjenashaj by using a tracking device application he had on his phone. All of his efforts to assist the police were ignored.

37. Qamil Gjenashaj also assured members of the NYPD that the alleged gun was in fact a toy starter pistol and not dangerous and he directed them to evidence of same at the Gjenashaj home.

38. Qamil Gjenashaj's initial arrest was unwarranted, and his imprisonment was painful and unnecessary. This constitutes an illegal arrest and wrongful and harmful imprisonment. The handcuffs were painful, physically and emotionally, and the imprisonment was in violation of the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

## AS FOR A THIRD CAUSE OF ACTION AND CLAIM FOR RELIEF

*(Conscious pain and suffering as to Plaintiff Lori Gjenashaj)*

39. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

40. Plaintiff Lori Gjenashaj was hospitalized at Richmond University Medical Center in Staten Island from March 25, 2018, until March 31, 2018. Her wounds were treated. She was medicated and then transferred to Elmhurst Medical Center under Police custody.

41. The medical reports indicated that she had gun shot wounds to right upper back and right axilla, 3 cm laceration to posterior aspect of right upper extremity."*

8

*Surgical notes of March 26, 2018, (page 2 of 3) signed by Kamel Turkman and Dr. George Kuczabski on March 28, 2018.)

## AS FOR A FOURTH CAUSE OF ACTION AND CLAIM FOR RELIEF

*(Supervisory Liability)*

42.     Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

43.     Lt. Matthew Harrison and unknown other ranking officers performed the supervising functions at the scene and were responsible for supervising the police officers who responded to the scene.

44.     Said Police Officer Supervisors failed to take any actions that would have prevented the injuries sustained by plaintiff Lori Gjenashaj.

45.     Specifically, Supervisors failed to file the guidelines for dealing with an EDP. Supervisors failed to deploy protective shields and failed to even attempt to use non-lethal devices to ensure the safety of all those present as required by the guidelines.  Supervisors also failed to request assistance from a medical expert and to seek assistance from the subject's family or friends as further required by the guidelines.  Instead, as described above, Defendants unlawfully detained Plaintiff Qamil Gjenashaj and refused to allow him to assist in safely detaining and communicating with Lori Gjenashaj so see could receive needed medical attention choosing instead to leave him chained to a desk for seven (7) hours.

46.     The individual supervisor defendants were personally involved in either ordering or failing to take preventive and/or remedial measures to prevent constitutional violations both in allowing the unlawful detainment of Qamil Gjenashaj and in failing to prevent the use of excessive force against Plaintiff Lori Gjenashaj.

9

47. As a direct and proximate cause of said defendants' failure to properly supervise their subordinates, Plaintiffs constitutional rights were violated as aforementioned in violation of 42 U.S.C. Section 1983.

## **AS FOR A FIFTH CAUSE OF ACTION AND CLAIM FOR RELIEF**

(*Monell Claim Against Defendant City – 42 U.S.C. § 1983*)

48. Plaintiffs repeat and reallege the allegations set forth above as though fully set forth herein.

49. All of the acts and omissions by the named police defendants described herein were carried out pursuant to unwritten policies and practices of the City of New York ("CITY") which were in effect at the time of the incident and were implemented with the knowledge, consent and under the supervisory authority of the defendant CITY.

50. Defendant CITY by their policy making agents, servants and employees, sanctioned, covered up or ratified the individual policy defendants' wrongful acts and conduct and/or failed to intervene and prevent such acts or conduct and/or encouraged those acts to continue.

51. The actions of the individual police defendants resulted from and were taken pursuant to the following de facto policies and/or well-settled and widespread customs and practices of the NYPD and therefore CITY implemented by members of the NYPD identified and named as defendants herein:

   a. NYPD officers are encouraged by their supervisors to unlawfully detain suspects and detainees without fear of consequence, reprimand, discipline or even retraining by the NYPD;

    b. NYPD officers routinely detain suspects and chain and imprison them against their will even when they know that suspects are unlikely to be charged with a crime. They do so with the knowledge and approval of their supervisors;

    c. NYPD officers are also encouraged to use excessive force even when dealing with EDP's such as Lori Gjenashaj to foster a culture of aggression and violence and fear of the police;

    d. NYPD officers are also encouraged to selectively use Body Cam Video cameras so they only capture footage favorable to the Police version of events rather than all aspects of a crime scene and armed activity.

52. The existence of the foregoing improper and unlawful de facto policies, customs and practices is known to supervisors, including Defendant Harrison and other employees of the CITY.

53. Supervisors tacitly accept and encourage a code of silence. Police officers are encouraged to refuse to report other officers' misconduct or tell false and/or incomplete stories in sworn testimony, official reports, statements to the Civilian Complaint Review Board ("CCRB") and the Internal Affairs Bureau ("IAB"), and in public statements designed to cover for and/or falsely exonerate accused police officers.

54. According to the NYC Administrative Code § 7-114: Civil Actions Regarding the Police Department, more than 19,000 claims were filed against the Police Department from January 1, 2015 through July 31, 2019 alone with many such claims alleging false arrest and the improper use of force.

55. Defendant CITY is acutely aware of certain NYPD officer's propensity for unconstitutional conduct.

56. Despite the knowledge of certain disregard for the Constitution demonstrated by prior civil rights allegations as set forth in paragraph 25 above, NYPD and CITY failed to take appropriate remedial action and instead exercised deliberate indifference to plaintiffs' rights.

57. Among other things, the NYPD and CITY failed to properly train, retrain, supervise, discipline and/or monitor its officers, including officer Gugliucci, and instead improperly retained and utilized them.

58. Despite having four separate civil rights complaints filed against him, Defendant Gugliucci was tasked by Defendant Harrison, the highest ranking officer at the scene, with taking charge of all of the officers weapons following the shooting of Plaintiff Lori Gjenashaj.

59. Upon information and belief, the NYPD and CITY failed to adequately investigate prior complaints filed against Officer Gugliucci.

60. Upon further information and belief, the NYPD and CITY failed to adequately supervise, reprimand or train Officer Gugliucci.

61. The aforesaid conduct by the CITY violated plaintiffs' rights under 42 U.S.C. Section 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A. An order declaring that the NYPD used unnecessary force in the arrest of Plaintiff Lori Gjenashaj;

B. An order declaring the arrest and detention of Plaintiff Qamil Gjenashaj as being unreasonable and/or improper;

C. An order declaring that Defendants failed to follow the Patrol Guide Command Operations Procedures Manual regarding the use of body-worn cameras dated 01/08/18, effectively covering up their actions;

D. Compensatory damages in an amount to be proven at trial;

E. Two million dollars in punitive damages against the City of New York;

F. Punitive damages against each of the individual Defendants in the amount of $500,000.00;

G. An award of the costs and expenses of this action, including attorneys' fees to the Plaintiffs pursuant to 43 U.S.C. Section 1988; and

H. Any such further relief as this Court may deem just, proper and equitable.


DATED this 3rd day of January 2020

/s/Joseph I. Stone
Joseph I. Stone, Esq.
*Attorney for Plaintiff*
310 Lexington Avenue, 9G
New York, NY 10016

TO: JAMES E. JOHNSON
Corporation Counsel of the City of New York
Attorney for Defendants City of New York
100 Church Street
New York, New York 10007

ATT: BRACHAH GOYKADOSH
Senior Counsel
Special Federal Litigation Division


Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the courts of the State of New York and in the United States District Court, Southern District of New York, certifies that upon information and belief and reasonable inquiry, the contentions contained in the annexed document are not frivolous.

JOSEPH I. STONE

## **VERIFICATION**

STATE OF NEW YORK     )
SS:                                           )
COUNTY OF Richmond )

LORI GJENASHAJ, being duly sworn, deposes and says:

That deponent is a Plaintiff in the within action; that deponent has read the foregoing ~~First~~ SECOND Amended Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes it to be true.

Sworn to before me this

3 day of Jan., 2020.

_____
LORI GJENASHAJ

_____
Notary Public

JOHN KRIARAKIS
Notary Public - State of New York
NO. 01KR6394566
Qualified in Richmond County
My Commission Expires Jul 8, 2023

STATE OF NEW YORK     )
SS:                                           )
COUNTY OF Richmond )

QAMIL GJENASHAJ, being duly sworn, deposes and says:

That deponent is a Plaintiff in the within action; that deponent has read the foregoing ~~First~~ SECOND Amended Complaint and knows the contents thereof; that the same is true to deponent's own knowledge, except as to matters therein stated to be alleged upon information and belief, and that as to those matters, deponent believes it to be true.

Sworn to before me this

3 day of Jan., 2020.

_____
QAMIL GJENASHAJ

_____
Notary Public

JOHN KRIARAKIS
Notary Public - State of New York
NO. 01KR6394566
Qualified in Richmond County
My Commission Expires Jul 8, 2023