UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------
LORI GJENASHAJ,

                Plaintiff,

                -against-

THE CITY OF NEW YORK, *et al.*,

                Defendants.
------------------------------------------------

19cv4142

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

        Plaintiff Lori Gjenashaj brings this federal civil rights action for excessive force and failure to supervise against the City of New York and two members of the New York City Police Department ("NYPD"). Defendant Lieutenant Matthew Harrison moves for summary judgment dismissing the claims against him. For the reasons that follow, Lieutenant Harrison's motion for summary judgment is granted in part and denied in part.

## BACKGROUND

        The following facts are undisputed unless otherwise noted. This action arises out of a chaotic sequence of events that began when Gjenashaj fired two blank rounds from a starter pistol at her daughter and mother-in-law inside the family's Staten Island home. (Pl.'s Resp. to Def. Lt. Harrison's Rule 56.1 Statement of Undisputed Facts, ECF No. 99 ("Pl.'s 56.1"), ¶ 4.) As Gjenashaj ran out the front door, her husband wrestled the pistol from her and followed her outside. (Decl. of Brachah Goykadosh in Supp. of Def. Lieutenant Matthew Harrison's Mot. for Summ. J., ECF No. 94 ("Goykadosh Decl."), Ex. L ("Pl.'s Dep."), at 90:3–22.) Gjenashaj jumped into the family SUV, and her husband got in the front passenger side and placed the

pistol under his seat.  (Pl.'s Dep., at 90:3–91:21; Goykadosh Decl., Ex. J ("Q. Gjenashaj Dep."), at 79:20–82:11.)  Hearing gunshots, a neighbor called 911.  (Decl. of Edward Stone in Opp'n to Def. Lieutenant Matthew Harrison's Mot. for Summ. J., ECF No. 98 ("Stone Decl."), Ex. F, at 4.)

Responding to a radio alert, NYPD police officers attempted to stop the SUV and apprehend Gjenashaj.  (Pl.'s 56.1 ¶ 5.)  She pulled the SUV over and her husband exited the vehicle.  (Q. Gjenashaj Dep., at 92:3–12, 117:21–23.)  However, Gjenashaj refused to exit the SUV and once again fled.  (Pl.'s 56.1 ¶ 5.)

Next, Gjenashaj drove to a friend's home and knocked on the front door.  (Pl.'s 56.1 ¶¶ 3, 8.)  When no one answered, she threw a brick at the door several times.  (Pl.'s 56.1 ¶ 8.)  Thereafter, her friend's thirteen-year-old son opened the door and told Gjenashaj that his mother was not home.  (Pl.'s 56.1 ¶¶ 8–12.)  While wielding the pistol, Gjenashaj borrowed the boy's cell phone and called her friend.  (Pl.'s 56.1 ¶¶ 11–13.)  Threatened by Gjenashaj's words and tone, the friend called 911 and reported a disturbance at her home.  (Pl.'s 56.1 ¶¶ 13–15.)  Two NYPD officers responded to the incident, spoke to Gjenashaj's friend, and viewed a cell phone video of Gjenashaj holding the pistol.  (Pl.'s 56.1 ¶¶ 16–17; Goykadosh Decl., Ex. C ("Campanella-Rivera Grand Jury Test"), at 3:8–24.)  In a radio transmission, Lieutenant Harrison and Police Officer Giancarlo Maratea were advised that Gjenashaj fled the scene and had a gun.  (Pl.'s 56.1 ¶¶ 18–19.)

The police located and surrounded Gjenashaj's SUV.  (Pl.'s 56.1 ¶¶ 21–25.)  Lieutenant Harrison and Officer Maratea arrived on scene and approached the SUV with their firearms drawn—Harrison on the passenger's side and Maratea on the driver's side.  (Pl.'s 56.1 ¶¶ 21–28.)

At this point, the parties' versions of events diverge sharply. According to Lieutenant Harrison, Gjenashaj turned up the volume on the radio in her SUV, picked up the gun, and pointed it at the passenger side window where he was standing. (Def.'s Statement of Undisputed Facts Pursuant to Local Rule 56.1, ECF No. 95 ("Def.'s 56.1"), ¶ 32.) In fear for his life, Lieutenant Harrison shouted "Gun!" and retreated from Gjenashaj's SUV to take cover. (Def.'s 56.1 ¶¶ 34–41.) Both officers repeatedly ordered Gjenashaj to throw the gun out of her vehicle, show them her hands, and exit the SUV. (Def.'s 56.1 ¶¶ 42–43.) According to Lieutenant Harrison, when Gjenashaj emerged from the SUV, she turned towards the officers and assumed a two-handed shooting stance with the pistol. (Def.'s 56.1 ¶ 50.) Officer Maratea testified that Gjenashaj raised her pistol and pointed it at him and Lieutenant Harrison. (Def.'s 56.1 ¶¶ 44, 47–49.) When Gjenashaj aimed at the police, Officer Maratea discharged four rounds. (Def.'s 56.1 ¶¶ 55–56.) Hearing a "pop" sound, Lieutenant Harrison fired a single shot. (Def.'s 56.1 ¶¶ 57–59.)

Gjenashaj presents a different narrative. She asserts she never pointed her pistol at Lieutenant Harrison when he was on the passenger side of the vehicle; never heard either officer shout "Gun!" or anything else; and held her hands up signaling surrender when she exited the vehicle. (Pl.'s Dep., 113:9–14, 113:18–19, 119:9–21; Pl.'s 56.1 ¶ 52.) Importantly, Gjenashaj claims that she exited the SUV without the pistol. (Pl.'s Dep., 118:22–23.)

It is undisputed that Gjenashaj was shot twice and that she then reentered her vehicle. Thereafter, Harrison and Maratea ordered her multiple times to toss the pistol out of the SUV. (Pl.'s 56.1 ¶¶ 60–61, 63.) Ultimately, she complied. (Pl.'s 56.1 ¶ 65.) When the officers approached to handcuff her, Gjenashaj resisted arrest by kicking Lieutenant Harrison. (Pl.'s 56.1

¶¶ 69–70.) Gjenashaj was then removed from her vehicle, brought to the ground, and handcuffed. (Pl.'s 56.1 ¶ 72.)

A grand jury indicted Gjenashaj for multiple state crimes and she ultimately pled guilty to menacing, possession of a weapon, and fleeing the police. (Pl.'s 56.1 ¶¶ 74–75.)

## DISCUSSION

I. Legal Standard

Summary judgment is proper only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden to demonstrate "the absence of a genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323 (1986). There is no genuine issue for trial where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Scott v. Harris, 550 U.S. 372, 380 (2007) (quotation marks omitted). This Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010). After the movant makes an initial showing that there is no material issue of fact, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial" without relying merely on allegations or denials in the pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); accord Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009).

II. Personal Involvement of Defendants in Use of Excessive Force

Lieutenant Harrison contends that summary judgment is warranted because he was not personally involved in the alleged use of excessive force against Gjenashaj. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of

1    damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); accord Moffit v.

2    Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991). "A police officer is personally involved

3    in the use of excessive force if the officer either: (1) directly participates in an assault; or (2) is

4    present during the assault, and fails to intercede on behalf of the victim even though he had a

5    reasonable opportunity to do so." Vesterhalt v. City of New York, 667 F. Supp. 2d 292, 297

6    (S.D.N.Y. 2009) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997)).

7            Here, Lieutenant Harrison was present at the scene, discharged his firearm, and

8    effectuated Gjenashaj's arrest. (Pl.'s 56.1 ¶¶ 23–60.) He was, in short, personally involved in

9    the alleged use of excessive force. Ricks v. O'Hanlon, 2010 WL 245550, at *4 (S.D.N.Y. Jan

10   19, 2010) (citing Williams v. Smith, 781 F.2d 319, 323–24 (2d Cir. 1986)).

11   III.    Excessive Force and Qualified Immunity

12           Lieutenant Harrison argues that he is entitled to summary judgment on the

13   excessive force claim because he is protected by qualified immunity. Qualified immunity shields

14   government officials "from liability for civil damages insofar as their conduct does not violate

15   clearly established statutory or constitutional rights of which a reasonable person would have

16   known." Pearson v. Callahan, 555 US. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S.

17   800, 818 (1982)). In deciding a government official's qualified immunity claim on summary

18   judgment, the court must consider (1) "whether the facts shown 'make out a violation of a

19   constitutional right'"; and (2) "'whether the right at issue was clearly established at the time of

20   defendant's alleged misconduct.'" Taravella v. Town of Wolcott, 599 F.3d 129 (2d Cir. 2010)

21   (quoting Pearson, 555 U.S. 223 at 232).

22

23

a. Violation of a Constitutional Right

Lieutenant Harrison avers that Gjenashaj fails to establish a constitutional violation because his use of deadly force was reasonable. When a plaintiff claims "that law enforcement officials used excessive force in the course of making an arrest, . . . such claims are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard." Graham v. Connor, 490 U.S. 386, 388 (1989). Under this standard, granting summary judgment is appropriate only when "no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 123 (2d Cir. 2004). In particular, "an officer's decision to use deadly force is objectively reasonable only if 'the officer has probable cause to believe that the suspect poses a significant threat of death or serious injury to the officer or others.'" Cowan ex rel. Estate of Cooper v. Breen, 352 F.3d 756, 762 (2d Cir. 2003) (citing O'Bert ex rel. Estate of O'Bert v. Vargo, 331 F.3d 29, 36 (2d Cir. 2003)).

Here, "[t]he key determination of 'reasonableness' . . . depends on which version of events one credits." Russo v. DiMilia, 894 F. Supp. 2d 391, 409 (S.D.N.Y. 2012). The parties dispute: (1) whether Gjenashaj pointed the gun at Lieutenant Harrison while she was inside the SUV; (2) whether Gjenashaj heard either officer yell "Gun!" or any other command; (3) whether Gjenashaj exited the vehicle with her hands up; (4) whether Gjenashaj was holding the gun when she exited the vehicle; and (5) whether Gjenashaj pointed the gun at the officers and assumed a two-handed shooting stance. (Pl.'s 56.1 ¶¶ 32, 34–42, 44, 47–49; Pl.'s Dep., 113:9–19, 118:22–119:21.)

Based on Gjenashaj's testimony, she exited the car without the pistol and was shot by the officers while her hands were up signaling surrender. Thus, "if [Gjenashaj's] version [of

events] is true . . . a reasonable jury could find that the use of deadly force was excessive." Russo, 894 F. Supp 2d at 410. Under these facts, a jury could find that Lieutenant Harrison did not have probable cause to believe that Gjenashaj "pose[d] a significant threat of death or serious injury to the officer or others." See Cowan, 352 F.3d at 762. Indeed, the Second Circuit has consistently held that summary judgment is inappropriate if "it is clear that determination of [a constitutional violation] 'turns on which of two conflicting stories best captures what happened on the street.'" Cowan, 352 F.3d at 763 (quoting Saucier v. Katz, 533 U.S. 194, 216 (2001)); see, e.g., Thomas v. Roach, 165 F.3d 137, 144 (2d Cir. 1999) ("Because the district court could not determine whether the officers reasonably believed that their force was not excessive when several material facts were still in dispute, summary judgment on the basis of qualified immunity was precluded."); Hemphill v. Schott, 141 F.3d 412, 416–18 (2d Cir. 1998) (holding that the district court erred by entering summary judgment on qualified immunity when there were disputes remaining about "material factual issues"). Accordingly, the genuine disputes of material facts present here preclude summary judgment on this issue.

      b.  Clearly Established Right at Issue

Even assuming there was a violation of a constitutional right, summary judgment is still inappropriate. Lieutenant Harrison argues that because his conduct did not violate a clearly established constitutional right, he is entitled to summary judgment based on qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson, 555 U.S. at 231 (quotation marks omitted). "A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix

v. Luna, 577 U.S. 7, 11 (2015) (per curiam) (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)).

As previously discussed, there are genuine issues of material fact regarding the reasonableness of Lieutenant Harrison's conduct. Because these "disputes overlap both the excessive force and qualified immunity issues, summary judgment must be denied." Cowan, 352 F.3d at 764 (denying summary judgment on a qualified immunity claim after determining in the excessive force analysis that there were genuine issues of material fact regarding the reasonableness of the officers' conduct); see also Bennett v. Falcone, 2009 WL 816830, at *6 (S.D.N.Y. Mar. 25, 2009) ("For the same reasons Plaintiff's excessive force claim survives summary judgment, the Court holds Defendants' qualified immunity claim insufficient.").

IV. Supervisory Liability

Gjenashaj claims that Lieutenant Harrison has supervisory liability because he was the "highest ranking officer" on the scene. (Mem. of Law in Opp'n to Def.'s Mot. for Summ. J., ECF No. 97 ("Pl.'s Mem."), at 14.) Specifically, Gjenashaj avers that Harrison should have required Officer Maratea to wear a body-worn camera; did not follow proper NYPD procedures for dealing with emotionally disturbed individuals; and failed to follow a series of NYPD guidelines.[1] (Pl.'s Mem., at 14.)

But § 1983 "does not provide a remedy for violations of best police practices." Bah v. City of New York, 2017 WL 435823, at *6 (S.D.N.Y. Jan. 31, 2017). Indeed, "[a] violation of the Patrol Guide or departmental policy does not, in and of itself, amount to the

---

[1] "In addition, Lieutenant Harrison failed to notify the Precinct Commander, failed to establish a proper command structure at the scene, failed to require the deployment of protective shields and failed to even attempt to use non-lethal devices to ensure the safety of all those present as required by the guidelines. Supervisors also failed to request assistance from a medical expert and to seek assistance from the subject's family or friends as further required by the guidelines." (Pl.'s Mem., at 14.)

violation of a right protected by the Constitution or federal law." Bah, 2017 WL 435823, at *6 (citing United States v. Wilson, 699 F.3d 235, 243 (2d Cir. 2012)). Gjenashaj's claims amount to nothing more than—perhaps valid—grievances that the officers should have abided by proper NYPD procedures. Moreover, to the extent that she claims the officers should have used protective shields or non-lethal force, this is encompassed in her excessive force claim. Therefore, the supervisory liability claim is dismissed. See, e.g., Lopez v. City of New York, 186 F. Supp. 3d 304, 313 n.7 (S.D.N.Y. 2016) ("Section 1983 is not a remedy for violations of the NYPD Patrol Guide."); see also Rizk v. City of New York, 462 F. Supp. 3d 203, 220 (E.D.N.Y. 2020) ("[A]n act or omission that violates police policy but does not also violate constitutional rights is not actionable under § 1983.").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted in part and denied in part. Specifically, Defendant Lieutenant Harrison's motion for summary judgment on the excessive force claim is denied. His motion for summary judgment on the supervisory liability claim is granted. The Clerk of Court is directed to terminate the motion pending at ECF No. 93.

Dated: December 14, 2020  
      New York, New York

SO ORDERED:

_____  
WILLIAM H. PAULEY III  
U.S.D.J.