UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

Lori Gjenashaj,

        Plaintiff,

  -against-

No. 19 Civ. 4142 (CM)

Lieutenant Matthew Harrison, et al.,

        Defendants.
------------------------------------------------------X

## ORDER

McMahon, J.:

    I have now re-reviewed the files on Plaintiff's jump drive containing Plaintiff's proposed trial exhibits PX-5, PX-6, PX-7, PX-8, and PX-9 and rule on those exhibits as follows:

    **OMNIBUS RULING**: Judge Pauley dismissed the supervisory liability claim against Lt. Harrison when he decided the summary judgment motion. (Docket #109 at pages 8-9). None of the officers who physically effected the arrest – the ones who handcuffed and handled Plaintiff during her arrest – is still a defendant in the case; neither Lt. Harrison nor PO Maratea was actually involved in that process. Therefore, there is no issue for the jury in connection with either the handcuffing of Plaintiff or her contention (conclusively refuted by her continuing loud yelling throughout the arrest process) that she could not breathe. The only possible issue arising from any allegedly excessive force during the physical arrest was whether Lt. Harrison could and should have intervened and stopped the junior officers from mistreating Plaintiff, but Judge Pauley dismissed that claim – a decision I am certainly not prepared to revisit. Therefore, no video that is offered for the purpose of establishing that: (1) Mrs. Gjenashaj was subjected to excessive force during the arrest process, either due to her being handcuffed too tightly or being unable to breathe, and (2) Lt. Harrison failed to intervene will be admitted for that purpose. The jury will be so instructed. The rulings below relate only to other reasons Plaintiff has given for offering these clips into evidence.

### PX-5 (DEF0011835):

    (i)    <u>Time Stamp 13:00:30-35</u>: Not admitted. As far as the court is aware, Defendant Maratea does not deny that he was not wearing his BWC at the time of the incident, so to the extent that the clip is offered to show that fact, it is cumulative. Moreover, while that much of the clip is intelligible, much of the rest of the clip is unintelligible. The clip can of course be used to impeach Maratea if he does not admit to having left his BWC at the station on the day in question.

(ii) <u>Time Stamp 13:06:10-19</u>: Admitted.

(iii) <u>Time Stamp 13:07:58-13:08:28</u>: Admitted.

**PX-6 (DEF0011836):**

(i) <u>Time Stamp 13:00:15-13:07:00</u>: Not admitted. Evidence that purportedly goes to "Plaintiff's overall treatment by the police" is not relevant to Plaintiff's action against two specific officers, neither of whom was involved in the arrest process depicted in this clip.

(ii) <u>Time Stamp 13:07:22-13:08:03</u>: Not admitted. Much of the clip is unintelligible. In fact, the only words I can clearly make out are "cross over from the 122;" but there is no dispute that the incident in question began in one precinct and ended in another. I do not hear Lt. Harrison saying the words "the description we were getting was that they had another...," so I cannot conclude that there is any relevance to this clip. If Plaintiff can figure out a way to make the clip more intelligible, she is welcome to do so and I will revisit this ruling.

**PX-7 (DEF0011837):**

(i) <u>Time Stamp 12:59:19</u>: Not admitted. The footage was shot after the incident, and so does not show "what Officers Campanella-Rivera and Medina would have observed upon exiting their vehicles as the shooting occurred and as they approach Plaintiff's vehicle."

(ii) <u>Time Stamps 13:01:56 -13:01:59 and 13:03:40-13:03:43</u>: Not admitted. For the reason explained above, it is not relevant to Plaintiff's case whether Lt. Harrison failed to monitor the activity of the other responding officers.

(iii) <u>Time Stamp 13:03:43</u>: I can only see one police car in the center-left rear of this still shot. I have no idea whose RMP this might be. I certainly cannot tell that that is it Officer Medina's RMP. Ruling deferred pending the receipt of authenticating evidence.

(iv) <u>Time Stamp 13:05:12- end of recording</u>: Not admitted. PO Medina is no longer a defendant in this case, so her statements do not come in as party admissions. If she ends up testifying, then this portion of the exhibit can be used for impeachment purposes if needed. Otherwise, it is hearsay.

**PX-8 (DEF0011844):**

(i) <u>Time Stamp 13:05:41-45</u>: Not admitted. After playing this video repeatedly, I still cannot make out what Officer Medina is saying. If Plaintiff can provide a better-quality version of this video that allows the listener to understand what is being said, I will reconsider whether Plaintiff can introduce this clip. Obviously, the clip can be used for impeachment if/when she testifies, but the quality of the sound needs to be improved.

**PX-9** (NYPD radio transmissions, audio recording):

(i) <u>12:23:51</u>: Admitted but for the limited purpose of explaining to the jury how the officers were dispatched and what they were told to look for. Not admitted as demonstrating anyone's knowledge about Plaintiff's erratic behavior. This is simply a physical description of Plaintiff and her husband as they appeared to a 911 caller, as relayed by a radio dispatcher. There is no reference to Plaintiff's behavior in this clip.

(ii) <u>12:26:35</u>: Admitted, although the court believes it unnecessary and a waste of time for Plaintiff's counsel to use video to establish what are undisputed facts.

(iii) <u>12:28:28</u>: Not admitted. Again, the fact that an unidentified unit says that Plaintiff's car was "stopped at Jefferson Ave & Hyland Blvd.," says absolutely nothing about her purportedly erratic behavior at the scene. The fact that the car stopped at Jefferson and Hyland is undisputed.

(iv) <u>12:28:35</u>: Admitted.

(v) <u>12:44:15</u>: Admitted.

(vi) <u>12:44:38</u>: Admitted.

(vii) <u>12:47:20</u>: Admitted.

(viii) <u>12:57:50</u>: Admitted.

I will see the parties this Thursday, February 24, in Courtroom 24A at 9:30 AM to deal with any preliminary matter prior to jury selection. Please be advised that we must wrap up on Thursday no later than 3:50 PM. We will resume the next morning, Friday, February 25, at 10 AM.

Dated: February 23, 2022

_/s/ Colleen McMahon_

U.S.D.J.

BY ECF TO ALL COUNSEL